Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 50046 - 1 | **DATE** | 7/10/2002 |
| **CASE TITLE** | U.S.A. vs. Fallon | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's motion to dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated on the reverse Memorandum Opinion and Order, defendant Fallon's motion to dismiss is granted. Counts 2, 4, 7, 9, 13, 15, 20, 21, 25, and 26 are hereby dismissed.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | JUL 10 2002 | 32 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | 02 JUL 10 PM 2:52 | 7-10-02 | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK FILED | date mailed notice | |
| /LC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

(Reserved for use by the Court)

# MEMORANDUM OPINION AND ORDER

In an indictment returned on October 10, 2001, defendants, James E. Fallon and Michael J. Borgetti, were charged with twenty-six counts of bank fraud under 18 U.S.C. § 1344. Fallon has filed a motion to dismiss certain counts as multiplicitous.

According to the indictment, Fallon and Borgetti owned AutoSmart, Inc., a used car dealership, and Borgetti owned Morgan Auto Sales ("Morgan"), another used car dealership. Both AutoSmart and Morgan had checking accounts at Alpine Bank of Illinois ("Alpine"). Defendants also had an agreement with Alpine that allowed them to issue bank drafts. A bank draft is basically a check drawn on a bank's own funds; the customer who issued the draft then reimburses the bank for the amount of the draft. As alleged in the indictment, defendants would issue a bank draft on behalf of one company made payable to the other company and deposit it into the other company's Alpine account. When the drafts were presented to Alpine, it would call Borgetti to ask if the company issuing the draft would pay for it. If Borgetti said it would, then Alpine would pay the payee of the draft (i.e., the other company). At defendants' direction, the company issuing the draft would seemingly reimburse Alpine by drawing NSF checks from its Alpine checking account made payable to Alpine. Defendants would then repeat this process, only reversing the companies' respective roles in the scheme.

In his motion to dismiss, Fallon argues the way in which the indictment separates out the bank draft transactions is multiplicitous. Count 1, for example, charges defendants with issuing five bank drafts on behalf of AutoSmart and made payable to Morgan for a total of $131,000. Count 2 then charges defendants with writing out two NSF checks drawn on AutoSmart's checking account and made payable to Alpine for a total of $131,000 to reimburse the bank for the corresponding drafts in Count 1. The indictment contains ten such pairs of counts, the first count based on the bank drafts and the second count based on the NSF checks drawn by defendants to cover those drafts (Counts 1 and 2, 3 and 4, 6 and 7, 8 and 9, 12 and 13, 14 and 15, 18 and 20, 19 and 21, 23 and 25, and 24 and 26).

Multiplicity is the charging of a single offense in separate counts of an indictment. See Unites States v. Allender, 62 F.3d 909, 912 (7th Cir. 1995), cert. denied, 516 U.S. 1076 (1996). In the bank fraud context, this requires the court to determine, under the particular facts of the case before it, what constitutes an "execution" of a scheme to defraud rather than a mere act in furtherance of such a scheme, as it is the former and not the latter that the statute prohibits. See id.; 18 U.S.C. § 1344. This is often, as it is here, not an easy task for the court. Relevant factors in this analysis are whether the counts in the indictment are "chronologically and substantively independent," whether they were "planned or contemplated together," and whether the transactions in question created a "new and independent risk for the lending institution." Allender, 62 F.3d at 912-13; see also United States v. Longfellow, 43 F.3d 318, 323 (7th Cir. 1994), cert. denied, 515 U.S. 1122 (1995). Other factors include the ultimate goal of the scheme, the nature of the scheme, the benefits intended, the interdependence of the acts, and the number of parties involved. See Longfellow, 43 F.3d at 323.

Applying these factors to this case, the court finds the manner in which the indictment charges the bank drafts and the NSF checks as separate violations of § 1344 is multiplicitous. There is no doubt that the two counts in each set are chronologically related. As the indictment makes clear, defendants always wrote out their NSF checks to "reimburse" the bank the very next day after the drafts were issued (with the exception of Counts 14 and 15, where the time period was three days due to the Labor Day weekend). In addition, the drafts and corresponding NSF checks were not only planned and contemplated together, but were in fact substantively dependent on each other. The indictment once again makes it clear that reimbursing the bank with the NSF checks was an essential part of issuing the bank drafts themselves: Alpine *required* the issuing company to reimburse it for the bank drafts being issued. (Indictment ¶ 2(d)) Because each bank draft thus involved a two step process – issuing the bank draft and reimbursing the bank – the checks used to reimburse the bank for the drafts were merely "acts in furtherance" of defendants' scheme to fraudulently inflate the balances of their companies' respective checking accounts, rather than separate executions of such a scheme. Cf. United States v. Colton, 231 F.3d 890, 910 (4th Cir. 2000) (separate counts of indictment were multiplicitous where the act alleged in each count was part of a scheme to defraud a bank that was "carefully crafted and performed in a particular sequence in order to divert a single payment to [defendants]"); United States v. Lilly, 983 F.2d 300, 305 (1st Cir. 1992) (where defendant assigned and submitted together twenty-nine different sales agreements for individual condominiums to bank as collateral for a single loan to purchase the condominium complex, the sales agreements constituted only one execution of a scheme to defraud; alleging each sales agreement in a separate count was therefore multiplicitous); United States v. Heath, 970 F.2d 1397, 1402 (5th Cir. 1992) (two loans fraudulently obtained from same bank were not separate executions of a scheme to defraud but were instead "integrally related; one could not have succeeded without the other"), cert. denied sub nom. Cheng v. United States, 507 U.S. 1004 (1993). The interrelatedness of the bank drafts and NSF checks is made even clearer after realizing that in each two-count set the same parties are involved in the same roles (the issuing company writing out NSF checks to reimburse Alpine for bank drafts deposited into the payee company's checking account), the total amount of money issued in bank drafts as alleged in the first count always matches up exactly with the total amount of money written out in the form of NSF checks, and the ultimate goal of both counts in each two-count set is the same – to defraud Alpine of the amount of money represented by the bank drafts in the first count.

That the bank drafts and their corresponding NSF checks within each pair of counts were all part of "but one performance, one completion, one execution" of the same scheme to defraud, Longfellow, 43 F.3d at 324 (quoting United States v. Lemons, 941 F.2d 309, 318 (5th Cir. 1991)), is confirmed by an economic risk analysis of the bank draft transactions. When Alpine agreed to honor the drafts defendants were issuing, it exposed itself to the risk that defendants would not reimburse it. And when defendants purportedly did so with the NSF checks, they did not thereby subject Alpine to a "new and independent risk" that the NSF checks would not be paid, as the government argues. The risk remained exactly the same: that Alpine would get stiffed on the original amount it paid on the drafts. It is true that the *form* of the risk changed from Borgetti's oral promise to the NSF checks, but the nature of the risk itself never changed.

For all of these reasons the government's reliance on cases such as United States v. Schwartz, 899 F.2d 243 (3d Cir.), cert. denied, 498 U.S. 901 (1990), and United States v. Poliak, 823 F.2d 371 (9th Cir. 1987), cert. denied, 485 U.S. 1029 (1988), is misplaced. In these cases the courts held that each check or deposit made in a check kiting scheme constitutes a separate "execution" of a scheme to defraud under § 1344. See Schwartz, 899 F.2d at 248; Poliak, 823 F.2d at 372. Here, in contrast, because of the way in which the bank drafts worked in tandem with the NSF checks, the drafts cannot be isolated from the corresponding NSF checks; instead, the drafts and NSF checks *together* form a single "execution" of a scheme to defraud, so separating them out from each other is multiplicitous.

For the reasons stated above, Fallon's motion to dismiss is granted. Counts 2, 4, 7, 9, 13, 15, 20, 21, 25, and 26 are hereby dismissed.